**ALEXANDRIA HOSPITAL, et al., Plaintiffs,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 83–0233–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 7, 1984.

Martin A. Donlan, Jr., John William Crews, Crews, Hancock & Dunn, Richmond, Va., Margaret W. Manning, Leonard C. Homer, Ober, Grimes & Shriver, Baltimore, Md., for plaintiffs.

Debra J. Prillaman, Asst. U.S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

The plaintiffs in this action are a group of hospitals who are "providers of services" to Medicare patients under Part A of the Medicare program, as defined in 42 U.S.C. § 1395x(u). They challenge an administrative regulation promulgated in June of 1979 [1] that altered the computation formula utilized from the inception of the Medicare program, in 1966, to reimburse provider hospitals for the cost of malpractice insurance. The defendant Secretary is the administrator of the Medicare program. The plaintiffs invoke the Court's jurisdiction pursuant to 42 U.S.C. § 1395*oo* (f)(1).

The matter is before the Court on the parties' cross-motions for summary judgment. Also before the Court are defendant's motion to strike certain of plaintiffs' exhibits and defendant's two motions to dismiss. One motion to dismiss is directed at only three of the plaintiffs; the other, filed after summary judgment motions had already been briefed and argued, seeks dismissal of the entire action on jurisdictional grounds.

In summary, the Court's ruling on the pending motions are as follows:

1. the motion to dismiss the entire action will be denied;

2. the motion to dismiss three plaintiffs on the current record will be denied, and the issue raised therein remanded to the Provider Reimbursement Review Board for further consideration in accordance with this opinion;

3. the motion to strike plaintiffs' affidavits will be granted;

4. the defendant's summary judgment motion will be denied; and

5. the plaintiffs' summary judgment motion will be granted.

---

1. 42 C.F.R. § 405.452(b)(1)(ii).

## Introduction

Numerous provider hospitals have filed suit in various federal district courts across the country challenging the regulation that is the subject of this action. At least thirteen of those courts have now issued their rulings on it.[2] Quite recently, Judge Turk, U.S. District Judge for the Western District of Virginia, issued a thorough, careful, and well-reasoned opinion in a case factually and procedurally almost identical to the instant one. *Bedford County Memorial Hospital et al. v. Heckler*, 583 F.Supp. 367 (W.D.Va.1984). The *Bedford County* opinion summarizes the history of the regulation, the administrative challenges to it, and the contention made in these civil actions. That summary is fully applicable to the instant case, with two differences hereinafter noted. Rather than repeat unnecessarily what Judge Turk has already so ably said, this Court will simply reference and adopt the *Bedford County's* introductory remarks as if fully reprinted herein.

The differences between this case and *Bedford County* both relate to the status of the plaintiffs. The first is factual and carries no legal significance: the medicare utilization rates for the instant plaintiffs ranged from 19.5% to 53.6% for the cost years in question (1980 and 1981) rather than from 27% to 60% as in *Bedford County*.

The second difference is procedural: while *most* of the instant plaintiffs, like those in *Bedford County*, sought reimbursement from their fiscal intermediaries for the malpractice costs now in issue, several of them did not. Those several—Potomac Hospital, Mary Immaculate Hospital, and Greensville Memorial Hospital (in its 1980 claim only)—claim instead to have complied with the new malpractice regulation and thereby to have effected a "self-disallowance" in the cost reports they filed with their intermediaries. They then sought to challenge the malpractice regulation in an appeal of the intermediaries' determinations to the Provider Reimbursement Review Board ("the Board"). The Board held in effect that because they had not disputed the issue with their intermediaries, they had waived their right to administrative or judicial review of the regulation. This procedural fact, unlike in *Bedford County*, is the basis of a motion to dismiss.

## Motions to Dismiss

The Court will address the most recently filed dismissal motion first. In this post-argument motion made pursuant to Fed.R. Civ.P. 12(b)(1), the defendant argues that the plaintiffs failed to file this action within a statutorily fixed sixty-day filing period, and that such failure amounts to non-compliance with a jurisdictional prerequisite, thereby requiring dismissal of the entire action. The plaintiffs respond that they did file within the specified 60-day period and, alternatively, that the filing time limit is a waivable—and in this instance waived—statute of limitations rather than a jurisdictional prerequisite.

 The Court agrees with the plaintiffs on both contentions. Judge Turk considered the issue in *Bedford County* and concluded that the 60-day filing requirement is a statute of limitations, not a jurisdictional prerequisite. This Court agrees with and adopts Judge Turk's reasoning in that regard. In this case, as in *Bedford County*, the defendant failed to raise the issue by way of an affirmative defense in her answer, and consequently she has now waived it.

As an alternative basis for denying the motion, the Court finds, for reasons that follow, that the instant plaintiffs in fact complied with the sixty-day filing requirement as the Court construes it.

Section 1395*oo* (f)(1) of Title 42, U.S.Code provides that a provider may challenge a

---

**2.** Citations to eleven of those decisions, each issued before March 28, 1984, are compiled in *Bedford County Memorial Hospital, et al. v. Heckler*, 583 F.Supp. 367 (W.D.Va., 1984), along with a summary of their holdings. One additional opinion has been issued since *Bedford County: Loyd Noland Hospital and Clinic v. Heckler*, NO. CV 83–PT–0868–5 (N.D.Ala., April 6, 1984). Both *Bedford County* and *Lloyd Noland* found in favor of the hospitals.

"final decision" of the Board, or reversal, affirmance or modification thereof by the Secretary,

by a civil action commenced *within 60 days of the date on which notice* of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary *is received.*

(Emphasis added).

The statute goes on to set out special procedures for expediting the administrative review process in cases in which the Board has no authority to grant the relief requested. The special procedures are applicable, in particular, to cases such as the instant one in which a provider seeks to overturn a regulation or law according to which its reimbursement has been computed, rather than simply to challenge the application of the regulations and laws. The portion of § 1395oo (f)(1) that sets out these special procedures was added by amendment in 1980.

The legislative history of the 1980 amendment reveals that the purpose of the special procedures was to eliminate unnecessary delay in obtaining meaningful review. H.Rep. No. 96–1167, 96th Cong., 2d Sess., at 394, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5526, 5757; H.Conf.Rep. No. 96–1479, 96th Cong., 2d Sess. at 136, *reprinted in* 1980 U.S.Code Cong. & Ad. News 5903, 5927. Before the amendment, a provider challenging a regulation had to undergo a time-consuming, but inevitably meaningless, full review by the Board, who had no authority to grant its challenge, before it could obtain judicial review. The amended § 1395oo (f)(1) allows a provider to obtain an early determination from the Board on whether or not it had jurisdiction to grant the relief sought. If the determination is negative (or if no determination is made within a specified time), a provider may seek immediate judicial review,

by a civil action commenced *within 60 days of the date on which such determination is rendered.*

42 U.S.C. § 1395oo (f)(1) (emphasis added).

The defendant argues that the statute unambiguously creates two different time limits, one for a final Board decision on the merits (60 days from when notice of decision *is received*) and another for a Board determination on jurisdiction (60 days from when notice of determination *is mailed*). The instant suit was filed 59 days after the plaintiffs received notice of the determination and 63 days after it was mailed. If, as the defendant argues, the statutory time limit for jurisdictional determinations runs from when the notice is mailed, then the plaintiffs filed three days late. If the time limit runs from when the providers received the notice, then their filing was timely.

The Court does not find the statute as unambiguous as the defendant suggests. The phrase "date on which such determination is rendered" could mean either the date on which the determination is tendered to the parties (i.e. received) or the date on which the determination is made (i.e. mailed). Additionally, the statute, as amended in 1980, specifies that a Board determination that it lacks jurisdiction "shall be considered a *final decision...*" (emphasis added). The older, general portion of the statute remains clear that a "*final decision* may be challenged "within 60 days of the date on which notice is received." § 1395oo (f)(1).

█ The legislative history of the 1980 amendment, cited *supra*, does not indicate any intent to specify a different time limit for challenging jurisdictional determinations than that previously set for challenging decisions on the merits. The purpose of the amendment, as previously discussed, was altogether different. In the Court's view, the statute is properly construed as specifying a single time limit for each: 60 days from the date on which the notice is received. This action was brought safely within that limit.

Additionally, the statute is at best ambiguous, in which case the Board could properly issue interpretive rules consistent with it. 42 U.S.C. § 1395oo (e). In this case,

and apparently all similar cases until quite recently, the Board's decision letter, notifying providers of its determination that it lacked jurisdiction, informed the providers that the filing time limit was 60 days from the date the notice was *received*. This interpretation of the statute is consistent with the statute and was within the Board's authority. Apparently it was not until after this action was filed that the Secretary and the Board adopted the stricter interpretation on which she now relies. Such tactics do not conform to the tenets of basic fairness and, indeed, the defendants' resort thereto simply fortified the Court's previously expressed conclusion that this action was timely filed. The Secretary protesteth too much. The Court concludes that this action was timely filed.

The other motion to dismiss is also filed pursuant to Fed.R.Civ.P. 12(b)(1). In it the defendant seeks dismissal of the claims of Mary Immaculate Hospital and Potomac Hospital, and of the Fiscal Year 1980 claim of Greensville Memorial Hospital. These are the hospitals that did not seek reimbursement from their fiscal intermediaries for the malpractice expenses now being challenged, purporting instead to have effected a self-disallowance in completing their cost reports for the years in question.

The Board found that the malpractice expenses for which these providers now seek reimbursement were not "covered by" the cost reports they filed for the years in question, that they gave no "overt notice" to their intermediaries of their intent to challenge the malpractice regulation, and consequently that the Board had no jurisdiction to entertain their challenges.

The defendant contends that the Court's jurisdiction is limited to reviewing the Board's determination that it lacked jurisdiction, and that the Court should uphold that determination as correct. Her position is that 42 U.S.C. § 1395*oo* limits the Board's—and thus this Court's—jurisdic-

tion to cases in which the provider sought reimbursement from the intermediary for the disputed cost. Even if, as in the instant case, the Secretary's regulation instructs the provider to exclude the cost in question, the provider must either seek reimbursement for the cost and allow the intermediary to "adjust" its cost report into conformance within the regulation, or the provider must include with its cost report some form of "overt notice" to the intermediary of its intent to dispute the cost. Failure to do so, the Secretary argues, deprives the Board and the Court of jurisdiction under § 1395*oo* (f)(1) to grant any relief.

The Court understands the Secretary's position to be that this policy, in favor of notice to the intermediary of a dispute, is implicit in the statute as a jurisdictional prerequisite. A different issue might be raised, for instance, if the Board, pursuant to its authority under 42 U.S.C. § 1395*oo* (e) to make rules and establish procedures not inconsistent with the statute, had promulgated a rule making such notice a prerequisite to Board review. But the Secretary makes no such claim,[3] and her argument hence must stand or fall with the proper interpretation of the statute.

The statutory language at issue reads in pertinent part as follows:

> The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination.

42 U.S.C. § 1395*oo* (d).

The essence of the Secretary's argument is that the phrase "matters covered by such cost report" refers to claims for reimbursement that the provider made in its

---

**3.** The Secretary cites to several regulations and to other portions of the statute than that discussed in the text, but the language she cites therein is equivalent to that used in 42 U.S.C. § 1395*oo* (d) and addressed in the text. *Athens*

*v. Schweiker* summarizes all the potentially relevant regulations and statutes, 686 F.2d at 995–996, and as can be seen from the excerpts quoted therein, the text's analysis of § 1395*oo* (d) is equally applicable to them all.

cost report. The instant malpractice claims, she contends, are "new claims" that were not raised in the cost report and hence they are not "matters covered" by the cost report.

This interpretation finds some support in *Athens Community Hospital v. Schweiker*, 686 F.2d 989 (D.C.Cir.1982), *petition for rehearing filed*, 686 F.2d 989 (D.C.Cir. 1982). In that case, a provider whose cost report was on appeal to the Board on one set of properly raised issues attempted to add to its appeal two new claims for costs that had been left out of the cost report filed with the intermediary several years earlier. The Court held that the board had no jurisdiction to entertain the new claims, construing § 1395*oo*(d) as follows:

> This provision is clearly limited to revisions of matters covered by the original cost report and does not authorize the Board to consider new claims.

686 F.2d at 995.

In her initial brief on this subject, the Secretary acknowledged that *Athens* and other decisions have acknowledged that a different issue would be raised if a provider "had initially made 'self-disallowances' of certain costs, [meaning that it] reported those costs to the fiscal intermediary but, because of regulations which seemed to bar those claims, did not ask reimbursement." *Athens*, 689 F.2d at 996; *St. Mary of Nazareth Hospital Center v. Department of Health and Human Services*, 698 F.2d 1337, 1340–1341 (7th Cir.1983); *cert. den.* — U.S. —, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983). *Our Lady of Lourdes Memorial Hospital v. Schweiker*, No. 80–CV–226 (S.D.N.Y. July 26, 1982), CCH Medicare and Medicaid Guide, ¶ 32,154. The Secretary contended nevertheless that the "self-disallowance" exception discussed in those cases was not applicable to the instant plaintiffs because they had failed even to report those costs in their initial reports to the intermediaries, such reporting being a key factor in the cases cited.

The plaintiffs' response to this argument was that they did indeed report the costs on their initial cost reports. Indeed, they had done just as the plaintiffs in *St. Mary of Nazareth* and *Our Lady of Lourdes, supra,* had done: they reported their full malpractice costs on Worksheet A and then self-disallowed those costs in making the computations on Worksheet A–8, in accordance with the Secretary's regulations. According to the plaintiffs, a cost report is not a single distinct document, but rather is a compilation including the worksheets to which they make reference. One of the instant plaintiffs additionally included with its cost report a letter of protest regarding the malpractice regulation that would meet even the stricter requirement of "overt notice," the plaintiffs contend. Copies of the so-called "Worksheet A" for each plaintiff and Greensville Hospital's letter of protest have been filed with the Court.[4]

The Secretary's reply concedes that her first brief was mistaken in this regard. She now contends, however, that the fact that she and the Board were not previously aware of the documents to which the plaintiffs make reference was due solely to the fault of the plaintiffs in failing to submit them to the Board for its jurisdictional review. She also appears to contend that even if those documents were before the Board, they would not have constituted the requisite overt notice to the intermediary; in this regard she seems to suggest that she does not concede the validity of the "self-disallowance" exception cases cited *supra.*

The parties have since attempted to engage in a virtual shouting match over whose fault it was that the proper documents were not before the Board at the time it made its decision.

■ The Court finds it unnecessary to declare a winner to that judicially aborted contest. Where, through mistake or inadvertence, indisputably relevant and avail-

**4.** The plaintiffs did not initially file copies of the referenced documents with their initial brief on this issue, but have since done so.

able information was not before the Board at the time of its decision, a remand to the Board for consideration of the information in question is an appropriate remedy. *James J. Williams, Inc. v. United States,* 241 F.Supp. 535 (E.D.Wash.1965); *see also Lindberg v. Califano,* 469 F.Supp. 920 (N.D.Cal.1979).

This remedy is especially appropriate where the responsibility for the omission cannot clearly be placed either on the administrative agency or on the party harmed.[5] In any event, the Court cannot in good conscience find that there was substantial evidence to support a Board determination that the malpractice costs were not "matters covered by such cost report[s]" where the facts reveal that the Board did not have the cost reports before it at the time of the determination.

Accordingly, this action will be remanded to the Board for reconsideration as to these providers in light of the additional evidence that has come to light in this action.[6] The Board should apply the law regarding self-disallowance of costs as stated in *St. Mary of Nazareth Hospital v. Heckler,* 698 F.2d at 1340–1341, which the Court finds persuasive.[7]

### Motion to Strike

The Secretary has moved to strike certain of the plaintiffs' affidavits on the ground that they were not part of the administrative record on which the disputed regulation must be judged. This issue has been raised in at least two of the other civil actions challenging the malpractice regulation. In each, the Court granted the motion to strike. *St. James Hospital v. Heckler,* 579 F.Supp. 757 (N.D.Ill.1984); *Bedford County v. Heckler, supra;* at n. 16. This Court agrees with that conclusion. Accordingly, for the reasons stated in *St. James Hospital v. Heckler,* 579 F.Supp. at 762, the affidavits will be stricken and will play no part in the Court's consideration of the merits.

### Motions for Summary Judgment

Judge Turk's opinion in *Bedford County, supra,* in combination with the earlier district court decisions on point, exhaustively canvassed the merits of the challenges to the malpractice regulation. The Court finds Judge Turk's opinion, and the other opinions that have upheld the challenge, persuasive, and now joins their ranks in holding the regulation invalid.

In light of the numerous opinions already filed, the Court sees no need to discuss at any length its reasons for so holding. However, because the previous opinions have varied somewhat in their reasoning, and because no one opinion fully expresses

5. The hospitals suggest that it was their intermediaries' responsibility to put the full cost report before the Board. In one sense, responsibility for the omission lies equally with all parties involved, for common sense should have dictated to them all that the Board can not properly determine whether a matter is "covered by" a cost report unless it has the full cost report before it. As a practical matter, however, the omission was most likely caused by confusion in the Board's procedures for handling group appeals and for handling expedited jurisdictional determinations. (The providers in question were parties to a large group appeal to the Board, comprised mostly of providers regarding whom this jurisdictional dispute was not applicable.) The expedited review process was relatively new at the time. In addition, a substantial increase in the number of group appeals had led the Board to issue new procedures regarding group appeals. As far as the Court can tell, the providers in question submitted all the materials required by those procedures.

6. Unless one of the parties seeks review in this Court of the Board's jurisdictional determination upon remand, there should be no need for this Court to consider additional matters after the remand. The Court's present rulings on the substantive issues will stand as the law of the case, and hence these providers' claims will stand or fall on the jurisdictional question.

7. It might be suggested that application of the "self-disallowance" exception rule to the evidence in this case so obviously merits a conclusion that the Board has jurisdiction that a remand is not necessary. The Court disagrees. Questions regarding what documents in fact constituted these providers' cost reports and what costs are in fact reported therein should be resolved in the first instance by the Board, who has special expertise in such matters.

the reasoning upon which the Court relies, a brief explanation of the Court's view on each of the issues raised is in order.

## A. PROCEDURAL ISSUES

*Notice of Proposed Rule-Making (NPRM)*

■ This Court agrees with Judge Turk's reasoning in *Bedford County* on this issue and consequently rejects the plaintiff's challenge to the NPRM. *See also* Judge DeMascio's discussion of this issue in *Mt. Carmel Mercy Hospital v. Heckler*, 581 F.Supp. 1131 (E.D.Mich.1983).

### *Basis and Purpose Statement*

■ Again the Court agrees with and adopts Judge Turk's *Bedford County* opinion on this issue. The Secretary did not comply with the requirement of 5 U.S.C. § 553(c) that she "give consideration to the relevant matter presented" in response to the NPRM and that she then publish "a concise general statement of [the rule's] basis and purpose." 5 U.S.C. § 553(c). Particularly glaring is the omission from the basis and purpose statement of any mention of the objections made to the statistical validity and the import of the *Westat* report, and the absence of any discussion of the alternatives proposed in the comments. At least one suggested alternative—allowing providers to purchase separate insurance policies for their Medicare patients, with Medicare fully reimbursing the cost of those policies—was clearly sufficiently viable as to merit some response.

Indeed, the inadequacies in the basis and purpose statement are supported by other indications that the Secretary did not in fact sufficiently consider the comments submitted. The final rule was published on June 1, 1979, just 15 days after the close of the comment period in which over six hundred comments were submitted. Common sense suggests that adequate consideration

could not take place in that brief span, and indeed the administrative record reflects that it did not. For instance, on May 8, 1979, one division within the agency sent a memorandum to another division, asking that the latter consider and report back on the comments contending that the *Westat* study was biased and not fair support for the conclusions drawn from it. Administrative Record, Vol. 2, Tab. 40. The record does not reflect that any response to this memorandum was made, or that the concerns raised therein were otherwise addressed, before the rule was promulgated on June 1, 1979.

For these reasons and those stated in *Bedford County*, the Court finds that the regulation must be overturned for noncompliance with 5 U.S.C. § 553(c).

## B. SUBSTANTIVE ISSUES

■ The Court agrees as well with the *Bedford County* analysis on these issues and with Judge Turk's conclusion therein that the regulation is arbitrary and capricious and violative of the Medicare statutes. Judge DeMascio's discussion of these issues in *Mt. Carmel Mercy Hospital v. Heckler, supra*, is also particularly persuasive.

Judge DeMascio's opinion is particularly insightful in showing that the *Westat* study, even if assumed to be unbiased and valid on its own terms, is logically inadequate to support the conclusions that the Secretary draws from it. As the Secretary implicitly acknowledged in the basis and purpose statement published with the final rule,[8] the validity of the new regulation depends not solely on a finding that malpractice awards to Medicare patients are significantly lower than awards to other patients. A crucial additional factual question is whether or not the imbalance, if any,

---

**8.** As an attempt at a response to comments suggesting that other general and administrative costs should be treated in the same fashion as the malpractice costs, the basis and purpose statement asserts that "because malpractice costs are so significant and the disproportionate allocation of malpractice costs to Medicare is so

great, we believe a unique exception is warranted to deal with these costs." 44 *Fed.Reg.* 31641, 31642 (June 1, 1979). The statement does not cite to any evidence supporting the factual assumptions implicit in this assertion, nor is the Court aware that the Secretary had any such evidence.

in malpractice insurance costs is so great and so out of proportion to imbalances in other "general and administrative" costs that the imbalances cannot be assumed to cancel each other out. As Judge DeMascio makes clear, neither the *Westat* report nor any other evidence in the administrative record gives any support whatsoever to the Secretary's conclusion that the supposed disproportionate allocation of malpractice costs is so great as to defeat the operation of this averaging principle.

### Conclusion

The Court sees deficiencies in the *Westat* report and in the use that the Secretary makes of it beyond these discussed herein and in the opinions cited, but to enumerate them herein would be to belabor the point. The Court recognizes that the Secretary is legitimately concerned with curtailing spiraling Medicare costs and particularly with preventing the Medicare program from shouldering more than its share of malpractice insurance costs. With better data and with a more workable alternative, her efforts in this regard would be applauded and affirmed. On this record, however, she must be reversed.

The Secretary's motion for summary judgment will be denied, and the plaintiffs' motion for summary judgment on the merits will be granted. The matter will be remanded to the Secretary for further consideration in accordance with this opinion.

An appropriate order will issue.