ATHENS COMMUNITY HOSPITAL, Bedford County General Hospital, Bristol Memorial Hospital, Chamberlain Memorial Hospital, Johnson County Memorial Hospital, Kingsport Hospital, U.T. Memorial Hospital, and Woods Memorial Hospital

v.

Margaret M. HECKLER, Secretary of the Department of Health and Human Services and Carolyne K. Davis, Administrator, Health Care Financing Administration.

Civ. No. 3–82–708.

United States District Court,
E.D. Tennessee, N.D.

May 31, 1983.

Dale C. Allen, Knoxville, Tenn., Robert A. Klein, Richard A. Jones, Los Angeles, Cal., for plaintiffs.

John H. Gill, Jr., U.S. Atty., and J. Michael Haynes, Asst. U.S. Atty., Knoxville, Tenn., Juan A. Del Real, Gen. Counsel, Ann T. Hunsaker, Asst. Gen. Counsel, Jeanne Schulte Scott, Dennis S. Diaz, Attys., Dept. of H & HS, Washington, D.C., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

In this action plaintiff hospitals challenge the validity of a Medicare regulation apportioning the costs of hospital medical malpractice insurance for Medicare reimbursement purposes. The regulation, 42 C.F.R. § 405.452(b)(1)(ii), was promulgated by the Secretary[1] of the Department of Health, Education, and Welfare in 1979. After the rule was adopted, defendant Secretary[2] of the Department of Health and Human Services (the Secretary) acquired responsibility for the implementation of the regulation and administration of the Medicare program. The case is before the Court on plaintiffs' and defendants' cross-motions for summary judgment.

Plaintiffs, all hospitals located in Tennessee, are qualified providers of medical services under the provisions of the Social Security Act. 42 U.S.C. § 1395, et seq. As such, they are entitled to reimbursement

---

1. Joseph A. Califano, Jr. was the Secretary of the Department of Health, Education, and Welfare when the malpractice rule was adopted.

2. Margaret M. Heckler is currently the Secretary of the Department of Health and Human Services.

for the reasonable cost of services provided to Medicare beneficiaries. 42 U.S.C. § 1395f(b). Reasonable cost is defined as the "cost actually incurred, excluding therefrom any part of the incurred costs found to be unnecessary in the efficient delivery of needed health services . . . ." 42 U.S.C. § 1395x(v)(1)(A). Congress delegated authority to the Secretary to promulgate regulations implementing the reasonable cost provisions of the Medicare Act. *Id.* The Act further directs that,

> In prescribing the regulations referred to in the preceding sentence, the Secretary shall consider, among other things, the principles generally applied by national organizations or established prepayment organizations (which have developed such principles) in computing the amount of payment, to be made by persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. Such regulations may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered by the insurance programs established under this subchapter, and may provide for the use of charges or a percentage of charges where this method reasonably reflects the costs. Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this subchapter) in order that, under the methods of determining costs, the necessary costs

> of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, and (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.

*Id.*

Prior to July 1, 1979, the Secretary reimbursed malpractice premium costs in proportion to the percentage of hospital use by Medicare beneficiaries. On March 15, 1979 the Secretary published a notice of proposed rulemaking in anticipation of changing the established reimbursement policy. 44 Fed. Reg. 15744–5. The proposed rule apportioned malpractice premium costs to Medicare based on the paid malpractice claims history of individual providers. On May 1, 1979 the Secretary granted a fifteen day extension to the 45-day period for public comment. The Secretary promulgated the final rule on June 1, 1979. It provides in pertinent part, as follows:

> *Malpractice insurance.* For cost reporting periods beginning on or after July 1, 1979, costs of malpractice insurance premiums and self-insurance fund contributions must be separately accumulated and directly apportioned to Medicare. The apportionment must be based on the dollar ratio of the provider's Medicare paid malpractice losses to its total paid malpractice losses for the current cost reporting period and the preceding 4-year period. If a provider has no malpractice loss experience for the 5-year period, the costs of malpractice insurance premiums of self-insurance fund contributions must be apportioned to Medicare based on the national ratio of malpractice awards paid to Medicare beneficiaries to malpractice awards paid to all patients. The Health Care Financing Administration will calcu-

late this ratio periodically based on the most recent departmental closed claim study. If a provider pays allowable uninsured malpractice losses incurred by Medicare beneficiaries, either through allowable deductible or coinsurance provisions, or as a result of an award in excess of reasonable coverage limits, or as a governmental provider, such losses and related direct costs must be directly assigned to Medicare for reimbursement.

The final rule contained one substantive change from the proposed rule. Under the proposed regulation, if a provider had no malpractice loss experience for the five-year cost reporting period, reimbursement would be based on an actuarial estimate of Medicare's share of the malpractice cost. 44 Fed.Reg. 15745. The "Supplementary Information" provided in the notice of proposed rulemaking included several alternative apportionment methods, however. These included a "national ratio" of Medicare patient malpractice awards to non-Medicare patient malpractice awards. *Id.* The regulation as adopted applies a "national ratio" in the absence of malpractice loss experience. 42 C.F.R. § 405.452(b)(1)(ii).

Plaintiffs say that the Malpractice Rule is invalid because it was issued in violation of the notice and comment procedures of the Administrative Procedure Act (APA). 5 U.S.C. § 553. Further, they claim that the substantive provisions of the rule violate the Medicare Act and are arbitrary, capricious, and an abuse of discretion within the meaning of the APA. 5 U.S.C. § 706(2)(A).

### Procedural Issues

■ The Administrative Procedure Act requires that new regulations be preceded by a notice of proposed rulemaking. 5 U.S.C. § 553(b). The APA also mandates a thirty-day period for public comment. 5 U.S.C. § 553(d). In this case the Secretary allowed a sixty-day comment period. Plaintiffs' claim of inadequate opportunity for public comment is therefore without merit.

■ Plaintiffs also say that the notice of proposed rulemaking failed to apprise the public of the alternative "national ratio" formulation for malpractice cost reimbursement. As noted above, the "Supplementary Information" to the notice indicated the possibility of alternative formulations, including a "national ratio." *See* 44 Fed.Reg. 15745. As indicated by the District of Columbia Court of Appeals,

> Section 553(b) does not require that interested parties be provided precise notice of each aspect of the regulations eventually adopted. Rather, notice is sufficient if it affords interested parties a reasonable opportunity to participate in the rulemaking process.

*Forester v. Consumer Product Safety Commission,* 559 F.2d 774, 787 (D.C.Cir.1977). The Court is of the opinion that the notice in this case provided adequate information for public comment on the "national ratio" provision. Furthermore, the failure to specifically identify and publish the primary report relied upon by the Secretary does not invalidate the notice. The notice referred to a "study conducted by an HEW consultant." This information was adequate as the record reflects that the report was made available to persons interested in pursuing the matter.

■ Plaintiffs also urge that the Secretary failed to "incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(c). The adequacy of the Secretary's identification of the issues and his response thereto in the "basis and purpose" statement is reviewable under the arbitrary and capricious standard of 5 U.S.C. § 706(1)(A). *See Home Box Office, Inc. v. Federal Communications Commission,* 567 F.2d 9, 35 (D.C.Cir. 1977), *cert. denied,* 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). As the court reaffirmed in *Home Box Office,* the "concise and general" statement,

> must be accommodated to the realities of judicial scrutiny, which do not contemplate that the court itself will, by a laborious examination of the record, formulate in the first instance the significant issues faced by the agency and articulate the rationale of their resolution. * * *

[The record must] enable us to see what major issues of policy were ventilated by the informal proceedings and why the agency reacted to them as it did.

*Id.* at 36 (citations omitted). The Secretary need not respond to all specific issues raised in comments on the proposed rule. *See Kennocott Copper Corp. v. Environmental Protection Agency,* 462 F.2d 846 (D.C.Cir. 1972). The responses, however, must be sufficient for the Court to determine whether the Secretary considered the relevant factors in reaching the final decision. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971).

■ The Court cannot say that the Secretary failed to comply with the standards set forth above. The Secretary clearly stated the basis for the rule change. A study conducted by an independent government contractor, Westat, Inc. (Westat Report), indicated that:

> [m]alpractice awards for Medicare patients are significantly lower in amount than losses for other patient population . . . Thus the use of overall Medicare utilization to allocate malpractice costs results in Medicare's paying a disproportionate amount of malpractice costs.

44 Fed.Reg. 31641. The Secretary stated that the amendment sought to avoid the disproportionate costs by restructuring the apportionment procedure for malpractice expenses. The Secretary acknowledged that all public responses opposed the proposed rule. He summarized the comments into four classes to which he responded generally.

Although the Secretary might have included more comments and discussion in the public record, this was a matter within his discretion. The published comments and "basis and purpose" statement are adequate for a determination of whether the Secretary "ventilated" the major policy issues in reaching the final rule. *See Home Box Office,* 567 F.2d at 36. Accordingly, the Court concludes that the Secretary complied with the minimum procedural requirements of the APA in promulgating the malpractice rule.

### Substantive Issues

Plaintiffs' challenge to the substantive provisions of the malpractice rule is two-pronged. They say the regulation is arbitrary, capricious, and an abuse of discretion in violation of the APA and that it also violates the provisions of the Medicare Act. Plaintiffs' arguments under the two acts are substantially the same, however.

Plaintiffs say the malpractice rule is invalid because: (1) it reimburses malpractice costs different from the way it reimburses other general and administrative costs; (2) it results in "bizarre" reimbursement consequences unrelated to Medicare utilization; (3) it fails to reimburse costs actually incurred by hospital providers; (4) it shifts costs from Medicare to non-Medicare patients; and (5) it does not take into account the reimbursement principles of other third-party payors of medical costs.

■ The guidelines for review of the agency's decision are well-established. The Court must determine whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. at 824. As the Supreme Court directed in *Overton Park,* "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.*

■ In the case of the Social Security Act, Congress delegated to the Secretary substantial authority to prescribe regulations governing Medicare cost reimbursement. 42 U.S.C. § 1395f(b). In reviewing the Secretary's actions, the courts have frequently commented on the complexity of the Act. *See Schweiker v. Grey Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). In *Grey Panthers,* Justice Powell aptly stated:

The Social Security Act is among the most intricate ever drafted by Congress. Its byzantine construction, as Judge Friendly has observed, makes the Act "almost unintelligible to the uninitiated." *Friedman v. Berger*, 547 F.2d 724, 727, n. 7 (CA2 1976), cert. denied, 430 U.S. 984 [97 S.Ct. 1681, 52 L.Ed.2d 378] (1977). Perhaps appreciating the complexity of what it had wrought, Congress conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the Act. *Batterton v. Francis*, 432 U.S. 416, 425 [97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448] (1977). *Id.* 453 U.S. at 43, 101 S.Ct. at 2640. Although Congress directed the Secretary to consider a number of factors in determining methods for the reimbursement of "reasonable costs," he was not bound to follow the payment principals of other organizations or any other specific reimbursement methodology. *See* 42 U.S.C. § 1395x(v)(1)(A); *see also Richey Manor, Inc. v. Schweiker*, 684 F.2d 130 (D.C.Cir.1982).

The Secretary bases the unique treatment of malpractice costs on the 1976 study by Westat, Inc. The study was a survey of medical malpractice claims closed from July 1 through October 31, 1976, by nine private insurance companies. Westat Report 2–1. Eighty-four percent of all malpractice claims closed by private carriers in 1976 were insured by these companies. *Id.* The study was able to determine the source of payment for 1,253 of the 1,852 awarded claims. Westat Report 5–9. These included 166 claims paid to Medicare patients. *Id.* Of $35,680,971 in malpractice awards to which the source of payment was identified, awards to medicare patients represented only $1,820,303, or 5.1 percent. *Id.*

The authors of the report made several relevant findings based on their survey. Westat Report 3–1—3–5. They found that generally, the size of the award decreased with age. They attributed this trend to "the fact that present value and expected future earnings lost are known to decrease with age." Westat Report 3–1. The average non-zero award for Medicare patients of $10,966 was "considerably smaller than for other groups." Westat Report 3–2.

The Secretary found that the Medicare program paid 30.6% of the costs of hospital services in 1978. Pelovitz affidavit, defendants' exhibit E. Under ·the prior regulations, the program consequently paid for approximately 30% of malpractice insurance premium costs based on the utilization ratio of Medicare to non-Medicare patients. The study therefore substantiated earlier reports indicating that Medicare patients accounted for a disproportionately small number of total malpractice claims and paid awards. Pelovitz affidavit.

The Secretary concedes that the malpractice rule deviates from the prior method of malpractice cost apportionment. It is also apparent that the rule's application may lead to reimbursement results totally unrelated to malpractice insurance premiums, a result plaintiff's call "bizarre." The Secretary contends, however, that the rule allows for the reimbursement of reasonable and necessary costs in compliance with the Medicare Act. She says further that the rule does not shift costs to non-Medicare patients, in violation of the Act. 42 U.S.C. § 1395x(v)(1)(A). Rather, she says that the prior utilization approach resulted in the Medicare program underwriting a large share of malpractice insurance costs primarily benefitting non-Medicare patients. The Court concludes that this last contention is supported by the record. The decision to change the apportionment methodology was not a clear error in judgment. *See Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823–24.

Plaintiffs' arguments regarding the merits of the new regulation have some merit, however. Many public comments urged that hospitals' paid claims histories and the payment status of patients have no relation to malpractice insurance premiums. Plaintiffs also note that the Secretary does not recognize malpractice insurance or self-insurance funds specifically for Medicare patients. *See* Provider Reimbursement Manual § 2163.2B. We agree that provision for separate policies might better reflect the

"discrete costing" principal on which the Secretary relies.

The Medicare Act does not require the Secretary to reimburse all general and administrative costs on the basis of per capita utilization, however. 42 U.S.C. § 1395x(v)(1)(A). The Secretary may apply estimates, impose limits on costs, and provide for charges or percentage of charge reimbursement. *Id.* An averaging approach or prophylactic regulation such as the alternative "national ratio" reimbursement is also allowed. *See Shaker Medical Center Hospital v. Secretary of Health and Human Services,* 686 F.2d 1203, 1209 (6th Cir.1982). As Judge Phillips stated in *Shaker Medical Center:*

> While the prophylactic regulations might prove "in particular cases to be 'underinclusive' or 'overinclusive,' in light of [their] presumed purpose, nonetheless [they are] ... widely accepted response[s] to legitimate interests in administrative economy and certainty of coverage for those who meet [their] terms." Our inquiry in reviewing the regulations and their applications is whether the agency in following its statutory directives "could rationally have concluded both that the particular limitation or qualifications would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule."

*Id., citing, Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472, 45 L.Ed.2d 522 (1975). We believe the Malpractice rule satisfies this standard.

The record indicates that the Secretary took the many comments into consideration and in fact anticipated the hospital industry's response to the proposed rule. In the Court's view, the current methodology might not be the most accurate reflection of "actual costs" incurred, as discussed above. It is not for us, however, to replace the Secretary's judgment with our own when her judgment is not "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

§ 706(2)(A); *Shaker Medical Center,* 686 F.2d at 1207.

For the foregoing reasons it is ORDERED that defendants' motion for summary judgment be, and the same hereby is, granted. It is further ORDERED that plaintiffs' motion for summary judgment be, and the same hereby is, denied.

Order Accordingly.