CHARTER MEDICAL CORP., Beltway Community Hospital, Inc., Charter Surburban Hospital, Inc., Charter Surburban Hospital of Mesquite, Inc., Middle Georgia Hospital, Inc., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of Health & Human Services and Carolyne K. Davis, Administrator of the Health Care Financing Administration, Defendants.

Civ. A. No. 84–473–2–MAC.

United States District Court, M.D. Georgia, Macon Division.

March 22, 1985.

F. Kennedy Hall, Macon, Ga., Glen A. Reed, Richard Shackelford, Atlanta, Ga., for plaintiffs.

Frank L. Butler, III, Macon, Ga., Susan Lee, DHHS, Atlanta, Ga., for defendants.

## AMENDED ORDER

OWENS, Chief Judge.

Plaintiffs filed a motion for summary judgment and a motion for expedited review. A hearing was held on the motions on March 8, 1985.

Plaintiffs challenge the validity of 42 C.F.R. § 405.452(a)(1)(ii) (1984), which is

known as the Malpractice Rule. The Rule governs the reimbursement of malpractice insurance premiums to hospitals treating Medicare patients. This issue has been litigated in at least twenty-two other district courts, seventeen of which have held the Rule invalid.[1] Only five district courts have held that the Malpractice Rule is valid.[2] The plaintiff-hospitals appealed each of these five decisions. Of the opinions that have been appealed, one circuit court remanded the case to the district court, *Walter O. Boswell Memorial Hospital,* and another circuit court reversed and remanded to the district court, *Humana of Aurora, Inc.* Two other district court cases, *Cumberland Medical Center* and *Athens Community Hospital,* have been consolidated on appeal and have not yet been decided. In addition, *Normandy Osteopathic-North Hospital* is pending in the Eighth Circuit.

A circuit court has issued an opinion and mandate holding that the Malpractice Rule is invalid. *Abington Memorial Hospital v. Heckler,* 750 F.2d 242 (3rd Cir.1984).

■ The district courts that held the Malpractice Rule invalid did so for several reasons. Some courts held that defendants violated the Administrative Procedure Act's notice and comment requirement;

other courts held that the Malpractice Rule is arbitrary and capricious; still other courts held the Malpractice Rule violates the Medicare Act. These prior opinions fully discuss the Malpractice Rule and its promulgation. There is simply no need for this court to repeat the reasoning of the cases cited above; to do so would be redundant and contrary to the principle of judicial economy. Of the prior district court opinions, the most complete opinion is Judge Fullam's in *Abington Memorial Hospital v. Heckler,* 576 F.Supp. 1081 (E.D.Pa.1983). The court has read the voluminous record, the briefs submitted by the parties, and all the earlier cases. For the reasons so well set forth by Judge Fullam, and affirmed by the Third Circuit Court of Appeals, this court wholeheartedly agrees that the Malpractice Rule is invalid. Plaintiffs' motion for summary judgment is GRANTED.

Congress directed that hospitals be reimbursed for their "reasonable cost." 42 U.S.C.A. § 1395f(b) (1983). The most compelling reason for this court's decision is the lack of a factual nexus between the Malpractice Rule and the hospitals' malpractice insurance costs. The Rule does not reimburse plaintiff-hospitals for their malpractice insurance costs. The cost incurred in obtaining a liability insurance policy is sole-

1. *Arkansas Methodist Hospital v. Heckler,* 597 F.Supp. 238 (E.D.Ark.1984); *East Jefferson General Hospital v. Heckler,* No. 83–4107 (E.D.La. Oct. 18, 1984); *Parkway Medical Center v. Heckler,* No. 83–1700–Civ–ARONOVITZ (S.D.Fla. Sept. 24, 1984); *Mercy Medical Center v. Heckler,* No. 3–82 CIV 1724 (D.Minn. Aug. 17, 1984); *Menorah Medical Center v. Heckler,* No. 83–0822–CV–W–4 (W.D.Mo. July 26, 1984); *DeSoto General Hospital v. Heckler,* No. 83–1050–B (M.D.La. June 20, 1984); *Alexandria Hospital v. Heckler,* 586 F.Supp. 581 (E.D.Va.1984); *Lloyd Noland Hospital and Clinic v. Heckler,* No. CV83–PT–0868–S (N.D.Ala. Apr. 5, 1984); *Bedford County Memorial Hospital v. Heckler,* 583 F.Supp. 367 (W.D.Va.1984); *Albany General Hospital v. Heckler,* 584 F.Supp. 614 (D.Or.1984); *St. Joseph's Hospital v. Heckler,* 583 F.Supp. 1545 (D.Ariz.1984); *Humana of Illinois, Inc. v. Heckler,* 584 F.Supp. 618 (C.D.Ill.1984) (one page opinion adopting *St. James Hospital* decision); *St. James Hospital v. Heckler,* 579 F.Supp. 757 (N.D.Ill.1984); *Chelsea Community Hospital v. Heckler,* No. 83CV–6126–AA (E.D.Mich. Dec. 20, 1983) (two page opinion adopting *Mt. Carmel*

*Mercy Hospital* decision); *Mt. Carmel Mercy Hospital v. Heckler,* 581 F.Supp. 1311 (E.D.Mich. 1983); *Abington Memorial Hospital v. Heckler,* 576 F.Supp. 1081 (E.D.Pa.1983); *aff'd,* 570 F.2d 242 (3rd Cir.1984); *Metropolitan Hospital, Inc. v. Heckler,* No. C–83–502A (N.D.Ga. June 25, 1984).

2. *Normandy Osteopathic-North Hospital v. Heckler,* No. 83–1687C(1) (E.D.Mo. Dec. 21, 1984), *appeal docketed,* No. 85–1247 (8th Cir. Feb. 21, 1985); *Humana of Aurora, Inc. v. Heckler,* No. 83–Z–70 (D.Colo. Sept. 19, 1983) (opinion issued from the bench), *rev'd and remanded,* 573 F.2d 1579 (10th Cir.1985); *Cumberland Medical Center v. Heckler,* 578 F.Supp. 39 (M.D.Tenn.1983) (one page opinion adopting *Athens Community Hospital* decision), *appeal docketed,* No. 83–5549 (6th Cir.); *Walter O. Boswell Memorial Hospital v. Heckler,* 573 F.Supp. 884 (D.D.C.1983), *remanded,* 749 F.2d 788 (D.C.Cir.1984); *Athens Community Hospital v. Heckler,* 565 F.Supp. 695 (E.D.Tenn.1983), *appeal docketed,* No. 83–5546 (6th Cir.).

ly the liability insurance premium paid by the hospital. Hospitals buy medical malpractice insurance at rates based upon the hospitals' annual bed occupancy. *Abington Memorial Hospital*, 576 F.Supp. at 1088 n. 7. The premium rates are set by the insurance companies; neither the insured hospitals nor the Secretary determine those rates. Therefore, the cost to the hospital for what the Secretary calls "medical malpractice" is the premium actually paid by the hospital for liability insurance.

If a medical malpractice claim is filed against a hospital, the insurance company pays the individual claimant. The insured hospitals do not pay malpractice claims. The number of such claims and the amount the insurance company paid can obviously affect future liability insurance premiums; however, the number and dollar amount of claims paid by the liability insurance company is unrelated to the Medicare status of the patients.

The Secretary argues that hospitals pay more insurance premiums for non-Medicare patients than for Medicare patients. While the Secretary would like to shift millions of dollars of hospital costs to non-Medicare patients, there is no factual support for the Secretary's assertion that "this regulation ... is grounded on a direct calculation of the costs incurred in furnishing health care to Medicare beneficiaries." 44 Fed.Reg. 31,642 (1979). The Secretary has ignored the basic facts of how insurance companies operate in the real world.[3]

The remaining issue before the court is an appropriate remedy. Defendants are hereby ENJOINED from the further enforcement of the Malpractice Rule in this case. Defendants' findings reimbursing the plaintiffs on the basis of the invalid Malpractice Rule are REVERSED. This case is REMANDED to the Provider Reimbursement Review Board, with the instruction that plaintiffs be awarded reimbursement in accordance with this order. These amounts are to be computed using the method of reimbursement in effect prior to the effective date of the Malpractice Rule. *See Abington Memorial Hospital*, 750 F.2d at 244.

Additionally, as to plaintiff Charter Suburban Hospital of Mesquite, Inc., defendants are ORDERED to recalculate no later than March 31, 1985, the transition period prospective payment rate, after due consideration of any evidence plaintiffs may submit to defendants as to such calculations, and to make the new rate effective on the first day of that hospital's next fiscal year (April 1, 1985).[4] As to the other plaintiffs, defendants are ORDERED to make similar recalculations no later than July 31, 1985, and to make the new rates effective on the first day of those hospitals' respective next fiscal years. Defendants shall make the payments necessary to implement the new rates in accordance with each hospital's normal schedule of payment. Such recalculations and payments shall not prejudice plaintiffs' right to appeal such determinations to this court.

Defendants are directed to comply with this ORDER notwithstanding the provisions of 42 C.F.R. § 405.-474(b)(3)(i)(C)(1)(iv) (1984), which purports to excuse compliance with a judgment and order of this court which is "subject to review ... by a higher reviewing authority." The defendants' action in adopting such provisions, as reflected in the Federal Register of August 31, 1984, at 49 Fed. Reg. 34739–40, 34761, insofar as it might conflict with this ORDER or affect the jurisdiction or power of this court to fashion a remedy in this matter, is hereby held to be invalid as in excess of the lawful powers conferred upon the defendants by

---

3. The court notes that the Malpractice Rule is the brain child of three staff members in the Department of Health, Education, and Welfare. Letter from Clifton R. Gaus to Administrator (Apr. 5, 1979). The three staff members received a $25,000 cash bonus as an award for their idea. Letter from Clifton R. Gaus to Suggestion Awards Coordinator (Apr. 5, 1979).

4. These dates were suggested to the court by plaintiffs. Plaintiffs rely upon 42 U.S.C.A. § 1395ww(d) (1983), which seems to require prospective payments. Thus, the recomputation of the amount due to plaintiff Charter Suburban Hospital of Mesquite, Inc. for the fiscal year that begins April 1, 1985, must be made prior to April 1, 1985.

the Medicare Act, 42 U.S.C. § 1395, *et seq.*, or by any other act of Congress, as an unlawful intrusion upon the lawful powers of this court under Article III of the Constitution of the United States and the acts of Congress relating thereto, and as a violation of plaintiffs' rights to due process of law under the Fifth Amendment to the Constitution of the United States. *See Battaglia v. General Motors Corp.*, 169 F.2d 254, 257 (2d Cir.1948), *cert. denied,* 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948). Defendants are hereby ENJOINED from the further enforcement of such provisions of this regulation in this case.

SO ORDERED, this 22nd day of March, 1985.[5]

---

**5.** The original order in this case has been amended twice. In the interest of clarity, the court has incorporated the subsequent orders into the original order.