**GREENVILLE HOSPITAL SYSTEM, d/b/a Greenville Hospital Center, and Greenville General Hospital, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 6:85–337–3.

United States District Court, D. South Carolina, Greenville Division.

July 19, 1985.

James B. Pressly, Jr., Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S.C., Leonard C. Homer, Carel T. Hedlund, Ober, Kaler, Grimes, & Shriver, Baltimore, Md., for plaintiff.

James D. McCoy, III, Asst. U.S. Atty., Greenville, S.C., Terry Coleman, Ann T. Hunsaker, Vicki L. Schulkin, Office of General Counsel, Department of Health and Human Services, Washington, D.C., for defendant.

## MEMORANDUM OPINION

GEORGE ROSS ANDERSON, Jr., District Judge.

This case involves an appeal under the Medicare statute by Greenville Hospital System on behalf of two of its hospitals, Greenville Hospital Center and Greenville General Hospital (hereinafter "Hospitals"). The Hospitals challenge the refusal of the defendant Secretary of Health and Human Services to adjust the hospital-specific portion of the payment they received for their first year under the new prospective payment system (PPS) enacted by Congress, effective for cost reporting periods beginning on or after October 1, 1983. The Secretary moves to dismiss the appeal on the grounds that the Hospitals have not exhausted their administrative remedies. She claims that the hospitals must wait until they receive a Notice of Program Reimbursement (NPR) following the end of their first PPS year before they can bring their appeal. The Hospitals contend that an NPR is not a requirement for bringing an appeal challenging the amount of payment established before the first PPS year began, and that they have met all of the relevant statutory and administrative prerequisites. The Court agrees with the Hospitals that an NPR is not required for an appeal concerning the predetermined PPS rate, and therefore denies the Secretary's motion to dismiss.

### Statutory Background

For cost reporting years commencing before October 1, 1983, Medicare applied its "cost reimbursement system" to reimburse hospitals for inpatient services furnished to Medicare patients. Under this system, Medicare determined the "reasonable costs" of the services that a hospital provided to patients, and then reimbursed the hospitals in that amount or in the amount of the hospital's customary charges, whichever was less. 42 U.S.C. § 1395f(b). At the close of a fiscal year, a hospital would submit a cost report to its "fiscal intermediary." See 42 U.S.C. § 1395h(a). The intermediary would review the cost report and would then issue a "notice of amount of program reimbursement" (NPR). 42 C.F.R. § 405.1803(c) (1982). A hospital

that was dissatisfied with an intermediary's NPR could seek a hearing before the Provider Reimbursement Review Board (hereinafter "PRRB" or "Board"). 42 U.S.C. § 1395oo (a)(1)(A) (1982).

Under PPS, hospitals no longer are required to wait until the end of the year to determine their costs and hence their amount of Medicare reimbursement. Rather, they are paid for inpatient operating costs based, generally, on a flat amount for each discharge, depending upon the "diagnosis related group" (DRG) into which the patient's diagnosis and treatment are classified. 42 U.S.C. § 1395ww(d). The amount to be paid for each discharge is set prior to the beginning of the year, so the hospital knows in advance how much it will be paid for each Medicare patient, depending on the DRG. Following a three year transition period, the DRG payment is based upon a predetermined national rate for each discharge, adjusted for the complexity of each hospital's case mix. 42 U.S.C. § 1395ww(d)(1)(A)(iii), (3). However, during the hospital's first three years under PPS, payment for each discharge consists of a blend of the DRG payment and a hospital-specific payment. 42 U.S.C. § 1395ww(d)(1)(A), (C). The hospital-specific payment is derived from the costs a hospital incurred during a prior base year, generally two years before the first PPS year. 42 CFR § 412.71.

### Statement of Facts

Greenville Hospital System operates several hospitals, including Greenville Hospital Center ("GHC") and Greenville General Hospital ("GGH"). After the close of the Hospitals' base year and before the first PPS year, the System reallocated beds and services among its hospitals. The result was that GHC nearly doubled its number of beds, significantly increased its services to include intensive care and coronary care units and other services, and became the center of the System's teaching program. GGH reduced its beds from 411 to 30, and lost several departments as well as all of its interns and residents.

As a result of these systemic changes, the base year costs of each hospital had little relationship to the costs the hospitals would actually incur during their transition years, and thus the hospital-specific rate for each hospital, computed from base year costs, was severely distorted. The System informed the intermediary of these changes before the intermediary determined the hospital-specific rate for the hospitals. However, the intermediary calculated hospital-specific rate based on each hospital's base year costs, without consideration of the significant changes that had occurred after the base year.

Following negotiations with the fiscal intermediary and with officials of the Health Care Financing Administration (HCFA), the Administrator of HCFA conceded that a "significant distortion" would exist unless an adjustment was made to the hospital-specific rate, and agreed to an adjustment to the rate of both Hospitals to reflect the changes that had occurred. Exhibit H to Plaintiff's Complaint. However, based upon the regulation at 42 CFR § 412.-71(a)(3)(ii) [1], the Administrator applied this revision prospectively only, effective beginning with the second transition year. The Administrator refused to apply the adjustment to the hospitals' first year under PPS because that year had begun before the Administrator made her determination. The Hospitals allege that they lost $1.25 million because of the Secretary's failure to make the adjustment applicable to the first year.

---

1. 42 CFR § 412.71(a)(3)(ii), reads as follows:

   (ii) The intermediary will recalculate the hospital's base-year costs incorporating the additional costs recognized as allowable for the hospital's base year. Adjustments to base-year costs to take into account these additional costs—

   (A) Will be effective with the first day of the hospital's first cost reporting period beginning on or after the date of the revision, order or finding or review decision; and
   (B) Will not be used to recalculate the hospital-specific portion as determined for fiscal years beginning before the date of the revision, order or finding, or review decision.

The Hospitals appealed the refusal of the Administrator to apply the revised hospital-specific payment rate to the Hospitals' first transition year to the Provider Reimbursement Review Board. However, because the Board is bound by the above-cited regulation which makes any relief prospective only, the hospitals also sought a determination from the Board that it did not have authority to decide the issue, pursuant to 42 U.S.C. § 1395oo(f)(1). Such an "expedited review" determination allows the hospitals to seek relief directly in federal district court.

The Board ruled that it could not hear the Hospitals' appeal, based on a HCFA Ruling which stated that a provider could not appeal its hospital-specific rate until it received its NPR following the end of the first year under PPS. The Hospitals then appealed the Board's decision that it lacked jurisdiction to this Court.

### Jurisdiction and Scope of Review

This Court unquestionably has jurisdiction under 42 U.S.C. § 1395oo to determine whether the Board's decision that it lacked jurisdiction over the Hospitals' appeals was correct. *Cleveland Memorial Hospital v. Califano,* 594 F.2d 993, (4th Cir.1979); *Hopewell Nursing Home, Inc. v. Secretary of HHS,* No. 75–1595–0 (D.S.C.1983), 1983 CCH Medicare and Medicaid Guide ¶ 33,-023. The scope of my review is to determine whether the Secretary's actions in requiring an NPR for a PPS appeal are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

In reviewing the NPR requirement, which was the basis for the Board's denial of jurisdiction, the Court is mindful that ordinarily the Secretary's decisions in administering the Medicare program are entitled to substantial deference. *Lexington County Hospital v. Schweiker,* 740 F.2d 287 (4th Cir.1984). However, deference cannot sustain an agency's interpretation which is contrary to the language of the statute. In *Securities Industry Associa-*

*tion v. Board of Governors of the Federal Reserve System,* 468 U.S. 137, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107 (1984), the Supreme Court stated:

> [D]eference is not to be a device that emasculates the significance of judicial review. Judicial deference to an agency's interpretation of a statute "only sets the framework for judicial analysis; it does not displace it." ... A reviewing court "must reject administrative constructions of [a] statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." (Citations omitted.)

"The judicial deference usually afforded to an agency's determination cannot be allowed to slip into judicial inertia...." *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983).

### The NPR Requirement

The NPR requirement is found in Health Care Financing Administration Ruling (HCFAR) 84–1,[2] and the subsequently amended Medicare regulation at 42 CFR § 412.72(b). HCFAR 84–1 and the regulation (hereinafter the "NPR requirement") state that a determination of the hospital-specific portion of a hospital's prospective payment is not final, and therefore is not reviewable, until after an intermediary has issued an NPR following the close of a provider's first PPS year.

The hospital-specific portion is determined prior to the start of the first PPS year and governs 75% of the hospital's payment for each discharge during that year. 42 U.S.C. § 1395ww(d)(1)(C)(i). However under the NPR requirement, a hospital must wait two to three years after the rate is determined until it receives its

---

2. 49 Fed.Reg. 22413–15 (1984).

NPR and is permitted to challenge that rate.[3]

This is not the first court to address the issue of whether an NPR is required to bring an appeal of the hospital-specific rate. To date, four district courts have invalidated the NPR requirement in the context of PPS. *Redbud Hospital District v. Heckler*, CCH Medicare and Medicaid Guide ¶ 34,084 (N.D.Cal. July 30, 1984) [Available on WESTLAW, DCTU database]; *Charter Medical Corp. v. Heckler*, 604 F.Supp. 638 (N.D.Ga.1985) (order denying motion to dismiss); *Sunshine Health Systems, Inc. v. Heckler*, No. CIV–85–953–AHS(Px) (C.D.Cal. April 10, 1985); and *Tucson Medical Center v. Heckler*, 611 F.Supp. 823 (D.D.C.1985). The Court finds that it must agree with these decisions, and is most persuaded by the reasons set forth in the *Sunshine Health Systems* and *Tuscon Medical Center* cases.

Section 1395*oo*(a) of the Medicare statute, which governs appeals to the Board, provides:

> Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... and ... any hospital which receives payments in amounts computed under Section 1395ww(d) [the PPS system] and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may obtain a hearing with respect to such payment by the Board, if
> (1) such provider—
> (A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, or
> (ii) is dissatisfied with a final determination of the Secretary as to the amount

> of the payment under Section 1395ww(d) ....
> (2) the amount in controversy is $10,000 or more, and
> (3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(i), or with respect to appeals under paragraph (1)(A)(ii), 180 days after notice of the Secretary's final determination.

The underscored portions of § 1395*oo*(a) were added pursuant to the legislation that established the PPS system. *See* Social Security Amendments of 1983, § 602(h)(1), Pub.L. 98–21, 97 Stat. 65, 165.

The Court finds that the language of the statute clearly establishes two separate appeals mechanisms. It continues the pre-existing appeal mechanism for cost reimbursement disputes, which requires that a cost report be filed and an NPR (the "determination ... as to the amount of total program reimbursement") be issued before an appeal can be commenced. However, it creates a different mechanism for PPS appeals. The PPS appeals process requires a hospital to file, instead of a "cost report", "such reports ... as the Secretary may require"; and requires "a final determination of the Secretary as to the amount of the payment" instead of a "determination ... as to the amount of total program reimbursement." Under the cost-reimbursement mechanism, the appeal must be brought within 180 days of the date of the NPR; for PPS appeals, the appeal must be filed within 180 days after "notice of the Secretary's final determination."

Despite these explicit changes in the statute, the Secretary contends that Congress did not intend any change at all to the administrative appeals process, and that the amendatory language serves merely to conform this section to the language of PPS. Because, even under PPS, hospitals are still cost reimbursed for a number of

---

**3.** In this case, the hospitals began their first PPS year on October 2, 1983. They do not expect to receive their NPR for that year until June, 1986.

items,[4] the Secretary maintains that hospitals must file cost reports and receive NPRs before challenging any part of their payments. To permit otherwise, she argues, would be to create a system of piecemeal litigation, by which hospitals could appeal one portion of the Medicare payment before an NPR, and another portion of it following receipt of the NPR.

The Secretary's arguments cannot overcome the express changes in the statutory language. To adopt her interpretation that an NPR is required for PPS appeals would be to ignore the explicit changes Congress made. As stated by Judge Oberdorfer,

> [HCFAR 84–1] fails to explain adequately why the PPS determination should be controlled by the NPR review provisions, particularly where Congress has taken the time to set up two entirely separate processes for initiating an appeal. Although the notice accompanying the ruling attempts to justify the Secretary's decision on light of existing [cost reimbursement] regulations, it does not contain any analysis of the statutory language. The Secretary's proffered interpretation of the statute would reduce the 1983 additions to section 1395oo(a) to mere surplusage.

*Tucson Medical Center*, slip op. at 8.

The Secretary argues that although the *rate* of the hospital-specific payment is determined before the first PPS year begins, the exact amount of the PPS payment is not known until the end of the year, when the hospital knows precisely how many discharges it had during the year. Thus, she claims, the "amount of the payment under § 1395ww(d)" is not known until the end of the year, and the provider cannot appeal until that time. I find this to be a "hypertechnical construction" of the statute which is contrary to the notion of a prospective payment system. *St. James Hospital v. Harris*, 535 F.Supp. 751, 760 (N.D.Ill.1981); *aff'd sub nom. St. Mary of Nazareth Hospital Center v. Dept. of Health and Human Services*, 698 F.2d 1337 (7th Cir.1983). With the exception of possible outlier payments, the amount of the payment for each discharge is determined before the year begins. The only additional information that is known at the end of the year is how many discharges the hospital made and to which DRG each discharge was assigned during the year. But that number in no way affects the amount the hospital receives for each discharge. Moreover, the hospital does not wait until the end of the year to receive its PPS payment. Rather, it is paid for each discharge as it submits each bill during the year, including additional amounts for outlier payments. And nothing that happens at the end of the year changes the amount the hospital is paid for each discharge.[5]

The fact that hospitals still receive cost-reimbursement for certain items, in addition to the amount per discharge, strengthens the conclusion that Congress intended two separate appeals mechanisms. It indicates that Congress clearly was aware that hospitals receiving PPS payments would still file cost reports and still receive NPRs. Yet Congress expressly deleted the requirements of a cost report and an NPR for an appeal of those predetermined PPS portions of a hospital's total Medicare payment.[6]

4. For example, capital costs and direct costs of medical education are not included in the hospital-specific portion and are still cost-reimbursed. 42 CFR § 412.2(d). In addition, a hospital may now receive additional cost-based payments for certified registered nurse anesthestists. 42 U.S.C. § 1395ww(d)(5)(E).

5. A hospital can elect to receive periodic interim payments during the year based on an estimate of its discharges. If it does so, then at the end of the year a reconciliation is made between the estimated and actual discharges. 42 CFR § 405.454(j). But that reconciliation is merely an arithmetical adjustment and does not require the issuance of a NPR. In fact, the Hospitals assert that the settlement has already been made without waiting for an NPR.

6. Indeed, the Secretary has indicated that an NPR is not essential for an appeal of the hospital-specific rate. On July 1, 1985, in response to a court order in *Redbud,* the Secretary issued "interim regulations" modifying the PPS appeal process, effective August 1, 1985. The regulations provide that a hospital can appeal its hospital-specific rate if, *inter alia,* "[t]he issues presented in the appeal can be fairly determined

The Secretary contends that the legislative history clearly indicates that Congress intended to retain the NPR requirement. The Senate Finance Committee stated:

> The committee amendment would provide for the same procedures for administrative and judicial review of payments under the prospective payment system as is currently provided for cost-based payments. In general, the same conditions, which now apply for review by the PRRB and the courts, would continue to apply.

S.Rep. No. 23, 98th Cong., 1st Sess. 57, *reprinted in* 1983 U.S.Code Cong. & Ad. News 143, 197. *See* H.R.Rep. No. 25, 98th Cong. 1st Sess. 142, *reprinted in* 1983 U.S.Code Cong. & Adm.News 219, 361.

The Court finds this passage does not require the retention of the NPR requirement. While Congress indicated that the "same procedures" would apply once a PPS appeal is initiated, it stated that only "in general" would the same conditions apply for bringing the appeal. "In general" implies that, "in particular", some of the conditions would change. While Congress retained some of the conditions for appeal (the $10,000 amount in controversy, the 180–day period in which to bring an appeal, and the Board as initial decision maker), it expressly deleted the requirements of a cost report and an NPR.

The Secretary also asserts that the agency has consistently interpreted the statute to require an NPR, and therefore the interpretation should be upheld. This argument must fail. The Court notes that, before the issuance of HCFAR 84–1, the Board accepted jurisdiction of the PPS appeals of many providers, based on the statute alone, despite the fact they had not received NPRs. Plaintiff's Exhibit B; *Tucson Medical Cen-*

*ter,* slip op. at 9. Moreover, even if an interpretation is consistently held, it cannot be sustained if it is inconsistent with the authorizing statute.

The Secretary's position that the determination of the hospital-specific rate is not a "final decision" for purposes of appeal to the Board is contrary to the Secretary's position as reflected in some of her other regulations and interpretations. The rate determinations are treated as *final* in the regulations, the manual provisions, and in the notice the Hospitals received from the intermediary, subject to narrow exceptions not applicable here.[7] Moreover, nothing that happens during the course of the PPS year will change that rate. This inconsistency did not escape the court in *Redbud:*

> Congress did not attempt to restrict the definition of "final determination" to that of issuance of the NPR after the first PPS year. Moreover, there appear to be inconsistencies in the rulings and regulations of the Secretary which address this issue. 42 C.F.R. § 405.-474(b)(3)(i), as amended June 1, 1984 (only three days after the Ruling quoted above, HCFAR 84–1, which stated that an intermediary's estimation of base year costs was not a final determination) provides that *"[t]he intermediary's estimate of base year costs* and modifications thereto *is final and may not be changed* after the first day of the *first cost reporting period beginning on* or after October 1, 1983 *except as follows* ...." (Emphasis added [by the court.]) 49 Fed.Reg. 23102 (June 1, 1984). None of the five exceptions thereinafter provided for encompasses modifications for an increase in costs due to changes which occurred *after* the end of the base year period but may have a serious effect if

---

before the end of the cost year and in the absence of information available on a completed notice of program reimbursement." 50 Fed. Reg. 27207, 27212, to be codified at 42 CFR § 412.204(c). However, the Secretary states she disagrees with the *Rosebud* order and is appealing it; if she successfully appeals it, she claims the interim regulations will be invalid *ab initio.* 50 Fed.Reg. 27210. Thus the Court does not rest its conclusion that the Board has jurisdiction now to hear the hospitals' appeals on these

new regulations, but discusses them only to demonstrate that the issuance of an NPR is not necessary to determine the correctness of the hospital-specific portion.

7. 42 CFR § 412.71(d); Medicare Provider Reimbursement Manual, Part 1, HCFA Pub. 15–1 (May 1983), §§ 2802.B, 2802.E; Plaintiff's Exhibit D to the Complaint.

they are not considered in estimating the hospital-specific rate, the situation confronting Redbud. However, as seen above, in the May 29, 1984, HCFAR 84–1 the Secretary instructed that the intermediary's estimation is *not* a final determination as required by the statute and regulations. [Original emphasis.] The Secretary has succeeded in creating confusion, if nothing else. She has by her June 1 revised regulations made final the type of determination for which Redbud seeks review, and yet has also attempted in her May 29 ruling to provide that this determination which she states is final does not fall within the category of "final determinations" reviewable by the Board.

*Redbud,* ¶ 34,085 at 9880 (footnotes omitted). This Court agrees that if the determination of the rate is final for purposes of payment, then it is final for purposes of appeal.

The Hospitals also contend that the NPR requirement relied upon by the Secretary as the sole basis of her motion to dismiss, when considered in context with other portions of the Secretary's regulatory scheme, makes the determination of the hospital-specific rate nonreviewable as to year one. As discussed above, the Secretary's regulations provide that, if a provider is successful in its appeal of its hospital-specific rate, adjustments will be made to the rate only for reporting periods beginning after the date the decision in favor or the hospital is no longer subject to appeal. If the Secretary requires the hospital to wait until after its first PPS year to even initiate such an appeal, then *ipso facto* the rate for the first year can never be adjusted. When the NPR requirement is viewed in conjunction with that regulation, it is clear that the NPR requirement operates to deprive providers of the right to a meaningful appeal granted by Congress. For this reason also the Court finds the NPR requirement invalid.

The Court thus concludes that the NPR requirement for PPS appeals is inconsistent with the plain language added to sec-

tion 1395oo(a) as part of the PPS amendment. The amendment provides that determinations as to the hospital-specific portion of the prospective payment can be appealed before an NPR is issued. The Board's decision that it lacked jurisdiction is reversed, the Secretary's motion to dismiss is denied, and the case is remanded to the Board for further proceedings in accordance with the accompanying order.